# UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES OF AMERICA

v.

YVETTE BELER

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

MAGISTRATE JUDGE DENLOW

CASE NUMBER: 08CR 343

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. Beginning no later than March 13, 2008 and continuing through and including April 9, 2008, in COOK County, in the Northern District of Illinois defendant(s) did, (Track Statutory Language of Offense)

devise and intend to devise a scheme and artifice to defraud the State of Illinois of money, property, and the intangible right to the honest services of YVETTE BELER, and to obtain money and property by means of materially false and fraudulent pretenses, representations, promises and material omissions, and in furtherance thereof, did cause to be delivered by mail according to the direction thereon an envelope bearing a Matteson, Illinois address and containing one Illinois Vehicle Title No. G05685443,

in violation of Title 18 United States Code, Sections 1341, 1346 and 2.

I further state that I am a Special Agent of the Secret Service and that this complaint is based on the following facts:

**See attached affidavit**

Continued on the attached sheet and made a part hereof:    x   Yes    ___ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

April 28, 2008                              at      Chicago, Illinois
Date                                                City and State

_____
Morton Denlow, U.S. MAGISTRATE JUDGE            Signature of Judicial Officer
Name & Title of Judicial Officer

STATE OF ILLINOIS   )
                    )        SS
COUNTY OF COOK      )

## AFFIDAVIT

I, TODD DI CARLO, being duly sworn, hereby depose and state:

1. I am a Special Agent with the United States Secret Service, assigned to the Chicago Field Office Financial Crimes Squad as a Group Leader, in Chicago, Illinois and have been a Special Agent for approximately five and half years. I am a graduate of the Federal Law Enforcement Training Center, Glynco, Georgia, where I received extensive training and instruction in federal law, rules of evidence, and federal investigative techniques. Prior to becoming a Special Agent with the U.S. Secret Service I was employed as a Chicago Police Officer from December 1991 until September 1994, and a Police Officer/Detective for the Matteson Police Department from September 1994 until September 2002. During my time in law enforcement, I have received extensive training in and developed extensive experience with crimes involving forgery, identity theft, fraud, theft by deception, auto theft, and other numerous financial related crimes.

2. The information provided in this affidavit was obtained from personal observations, training and experience, interviews with banking and auto dealer personnel, victim interviews, my review of records, my personal knowledge of this investigation and information from other law enforcement officers. The information is solely a

1

summary of the facts known in this case and is submitted for the limited purpose of establishing probable cause in support of a Complaint charging YVETTE BELER with violating federal criminal law, Title 18 U.S.C. Section 1341, 1346 and 2. This affidavit does not contain all the facts known to me concerning this investigation.

3. On the basis of this information, I allege facts contained herein to show that there is probable cause to believe that defendant YVETTE BELER devised and intended to devise, and participated in, a scheme and artifice to defraud the State of Illinois of money, property, and the intangible right to the honest services of defendant BELER, and to obtain money and property by means of materially false and fraudulent pretenses, representations, promises and material omissions, and in furtherance thereof used the United States mails, in violation of Title 18, United States Code, Sections 1341, 1346 and 2.

4. Based on information provided by law enforcement entities, the Secret Service have been investigating BELER for misappropriating for personal and financial gain third party personal identifiers and information she has obtained from her position in the Illinois Secretary of State's Office, and providing the information to unauthorized individuals. BELER is also releasing financial liens from vehicle titles without the financial institutions knowing the liens are being cleared, and then subsequently sending the falsified vehicle titles to unauthorized individuals, so these vehicles can be improperly sold with clear vehicle titles.

A. FIDUCIARY DUTIES OF BELER

5. Law enforcement has confirmed that BELER in fact is currently employed by the Illinois Secretary of State as a data imput controller. She works in the Springfield, Illinois office.

2

6.  In her capacity as a State of Illinois employee, BELER owed a duty of honest services to the State and the people of the State of Illinois in performance of her respective public duties.

7.  Pursuant to the criminal laws of the State of Illinois defendant BELER was prohibited from:

    (a)  receiving any property or personal advantage not authorized by law, knowing it was promised or tendered with intent to cause her to influence the performance of any act related to the employment or function of her office, (720 ILCS 5/33-1(d));

    (b)  performing any act in excess of her lawful authority, with intent to obtain a personal advantage for herself or others (720 ILCS 5/33-3(c)); and

    (c)  soliciting or knowingly accepting, for the performance of any act, a fee or reward which she knew was not authorized by law (720 ILCS 5/33-3(d)).

B.  **HISTORY OF THE RELATIONSHIP BETWEEN BELER AND THE CS**

8.  On February 25, 2008, a confidential source (CS) who has an extensive criminal background involving fraud and identity theft, related information about his relationship with BELER who he knew through her employment with the Illinois Secretary of State's Office, Springfield, Illinois. He related that BELER, through her position with the Illinois Secretary of state's office, could obtain personal information about vehicle owners through their license plates and VIN numbers, and also obtain personal identifying information about people with Illinois drivers licenses and state identification cards, such as dates of birth, social security numbers and addresses of individuals.

9. The CS related he met BELER about two to three years ago when he personally visited the Illinois Secretary of State's Office in Springfield to place an order for vanity plates. The CS related this is the one and only time he met BELER in person, at which time, they struck up a relationship.

10. On the basis of that relationship, the CS related that he subsequently was able to directly contact BELER via the phone whenever he needed to place an order. The phone interactions lead to a relationship where personal information regarding third parties was exchanged between them, with the CS asking BELER for additional types of information as the relationship became more established. According the CS, during one of the phone calls placed by the CS to BELER, the CS inquired about getting personal information of a vehicle and its owner corresponding to a VIN number he provided to her. BELER was able to locate the requested information, and provided the information to the CS. The CS related that he asked for and received personal information corresponding to vehicles and their owners from BELER on about four or five occasions.

11. The CS increased the information he was requesting from BELER to asking for all personal identifiers based upon just a name, for example the CS stated "I need the information on five people with the name John Smith." BELER would then conduct checks through the Illinois Secretary of State data base system and obtain the social security numbers, date of births, addresses, and the driver's license numbers for those individual with the same name as requested by the CS. BELER would call the CS back and provide him with the information she had collected at his request. The CS related that he requested this type of information from BELER on at least four occasions.

4

12.     The CS further related that he also had in the past provided a plate number or VIN number of a vehicle to BELER and asked her to check if there were liens on the specific vehicle. If there was a lien, BELER would provide the CS with the name of the lienholding bank or financial institution. The CS related that he used the information provided by BELER to send via U.S. mail to BELER at the Illinois Secretary of State's Office a fraudulent letter purporting to be from the bank that released the lien on the vehicle. The letter would state the original title was lost and a replacement was needed, and that the bank no long had an interest in the vehicle. The instructions in the letter would state that the replacement title should be sent to a P.O. Box preset by the CS, so he would receive the new issued title. The CS related that BELER filed the proper paperwork, processed the title application, and the replacement title would be sent to the CS upon its completion. The CS further related that he sent BELER on several occasions $100 for the work she did for him and the promise of dinner if BELER visited Chicago.

C.     UNDERCOVER INVESTIGATION OF BELER

13.     On March 5, 2008, Illinois Secretary of State Police Investigator Mark Atwood, had two fictitious/covert vehicle titles (VIN No. WDDNG86X38A196613 registered to Individual A and registered to VIN No. WDDNG86X38A192108 registered to Individual E) and three fictitious/covert identities (Individuals B, C, and D) issued to be used by the CS in the covert investigation of BELER. The purpose of the investigation was to have BELER issue new fraudulent titles with no liens for the two VIN numbers that the CS provided to her and also to provide to the CS obtain personal information (such as date of birth, address, and social security number) for people with the same names as Individual B, Individual C, and Individual D.

14. On March 13, 2008, the CS, acting at the direction of law enforcement, placed a consensually recorded call to BELER at her Secretary of State office. The CS provided BELER with the two fictitious VIN numbers and two names (Individual B and Individual C). BELER agreed to find out the registered owner of each vehicle and the banks that had a lien on each vehicle. BELER also agreed to obtain personal information such as dates of birth, social security numbers and addresses of people with the same names as the two names provided by the CS.

15. On March 13, 2008, the CS placed another consensually recorded call to BELER at her Secretary of State office. BELER related she was unable to find the information for the names the CS provided but had successfully located the information for one of the titles. BELER related that the first VIN number she looked up showed that the vehicle was titled in the name of Individual A and that JP Morgan Chase Bank held the lien. The CS confirmed BELER'S address at work, to ensure she would receive the information being sent to her. During the exchange, BELER agreed to accept compensation for providing the requested information to the CS.

16. On March 13, 2008, to followup on the above described conversation between the CS and BELER, I sent via United States Express Mail No. EB 655620552 US, to the attention of BELER, care of Secretary of State, 501 S. 2nd Street, Rm 521, Springfield, Illinois 62756, a parcel containing the following items: (1) Money Order No. B350405 for $65.00, for the processing of the title; (2) a fictitious release of lien from JP Morgan Chase; (3) a handwritten letter to BELER from the CS, which stated: "Yvette, send the information to this P.O. Box. I sent you the Express Mail Envelope so send it back in

there plus also the money for the Express Package."; and (4) $120 in United States currency.

17.   . On March 17, 2008, the CS placed a consensually recorded call to BELER at her Secretary of State office. BELER related to the CS that she was having trouble getting into the computer system to check the names previously provided to her by the CS, but stated that she hoped to get the titles processed by the following week. BELER further related she had to spend extra money to obtain the requested title and the CS replied that he would send her more money to compensate for BELER's personal money used. The CS also provided BELER with another name, Individual D, and requested BELER provide personal identifiers for this name as well. The CS also provided another VIN number to BELER. BELER related that the vehicle with VIN number WDDNG86X38A192108, which the CS had previously provided to her, was encumbered with a lien. BELER then provided the CS with the registered owner's name (Individual E) and the name of the lienholding bank (Soy Bank).

18.   On March 17, 2008, to followup on the above described conversation between the CS and BELER, I sent via United States Express Mail No. EB 655616495US, to the attention of BELER, care of Secretary of State, 501 S. 2nd Street, Rm. 521, Springfield, Illinois 62756 a parcel containing the following items: (1) Money Order No. B350785 for $65.00, made out to the Illinois Secretary of State for the processing of the title; (2) a fictitious release of lien from Soy Capital, releasing the lien on the 2008 Mercedes Benz, VIN No. WDDNG86X38A192108; (3) a handwritten letter to BELER, stating the following: "Yvette, The only thing I need, is for you to give me an release of lien off the title. Enclosed is the release of lien letter. The $65.00 money order, and $20.00 for over

7

night package for you to send it back to me. And also $100.00 to replace the $100.00 you used to get the other title."; and (4) $120 in United States currency.

19. A tracking check with the United States Postal Service, on USPS Express Mail envelope no. EB 655616495 US, showed that the item was delivered at 10:52 a.m., on March 18, 2008.

20. On March 19, 2008, the CS placed a consensually recorded call to BELER at her Secretary of State office. BELER informed the CS she thought someone was trying to get her in trouble for doing something she did not do. More specifically, BELER related to the CS that she had been called into the Inspector General's (IG) office and questioned about a computer search she ran. BELER related that she told IG personnel that she had hit an incorrect key, and that is why the search had caused problems in the office. During the call, BELER also agreed to the finish her work for the CS early in the morning on the next day to avoid anyone seeing her working on these name searches. BELER and the CS discussed the payment and how much was needed for the titles. BELER acknowledged that some of the money was for the completion of the titles, and the rest was for her to keep. The CS also informed BELER that more money could be coming her way if she completed the searches the CS needed to finish his deals. BELER also admitted that she knew the title documents were made up by the CS, and not connected to any of banks that currently held the titles. BELER provided her cell phone number to the CS as a better way to contact her in case the office was being monitored.

21. On March 20, 2008, the CS placed a consensually recorded call to BELER at her Secretary of State office. BELER related that she still could not get the names or information requested by the CS. However, she related that she was able to get the titles

8

processed, and would keep the CS informed on when he would receive them. She also noted that the name of Individual C seemed to be the name that was causing the office to investigate, and BELER confirmed she would not be able to look up any more names that day.

22. On March 21, 2008, the CS placed a consensually recorded call to BELER at her Secretary of State office. BELER requested the mileage for the two car titles the CS requested.. BELER informed the CS that mileage information for cars with model years of 2007 or later is required for title requests. The CS provided the information, and BELER informed the CS that this should help complete the title request forms. BELER related she was going to hang on to the titles and send only one at a time. BELER stated she was going to have to obtain the title for Individual A's vehicle, and then resubmit it to have in order to change it over to the CS's name. BELER stated that both titles should be delivered to the CS by the end of the week. BELER also offered to fax a copy of the title to the CS.

23. On March 27, 2008, the CS placed a consensually recorded call to BELER at her Secretary of State office. BELER confirmed the CS's post office box address. BELER further advised that she was sending out the newly cleared vehicle title in the name of Individual E via the United States Express Mail letter, and that the CS should receive the envelope the following day. BELER further related that she would fill out the title application and appropriate paperwork to transfer the title from Individual A to the CS.

24. Law enforcement verified through Illinois Secretary of State databases that the vehicle titles for the two fictitious/covert vehicles registered initially to Individual A and

9

Individual E had been processed and issued, and that both fictitious/covert vehicles had the liens removed from the titles.

25. On March 27, 2008, the CS placed a consensually recorded call to BELER at her Secretary of State office. BELER confirmed she also sent documents with Individual B's personal information, along with the vehicle title for Individual E. BELER related that she would not be able to supply the CS with any additional personal information, as she had in the past. BELER also related that the other vehicle title for Individual A should be sent out in the mail on April 2, 2008. BELER also confirmed her home address.

26. On March 28, 2008, I went to the Matteson, Illinois United States Post Office and retrieved from the undercover P.O. Box of the CS a United States Express Mail Envelope No. EB 655616487 US addressed to CS, P.O. Box 1879, Matteson, IL 60443, from Secretary of State, 501 South 2nd Street, Springfield, IL 62756, signature waived and signed by BELER. Included in that envelope were (1) a printout of personal information for names identical to Individual B's name, which included social security number, date of birth, driver's license number, height, and weight; and (2) State of Illinois Certificate of Title No. G05591497 for 2008 Mercedes Benz, VIN No. WDDNG86X38A19208.

27. On April 1, 2008, law enforcement obtained a money order in the amount of $500.00 for BELER from the CS, as payment for facilitating the clearing of two vehicle titles, and providing personal identifiers of certain individuals to the CS. Continuing on this date, to followup on the above described conversations between the CS and BELER, law enforcement sent via USPS Express Mail USPS Express Mail envelope no. EB

454271890 US, addressed to BELER, at 2120 E. Cook St., Springfield, Illinois 62703, from the CS. The envelope contained the following: (1) a letter to Yvette, stating "Thanks for looking out for me on the title, and also on the Individual A name, nice surprise. I made good money on the Mercedes deal. As promised I sent you this for all your help now and in the future. You are a life saver;" and (2) the TCF Money Order No. 302811272 in the amount of $500.00 made payable to BELER

28. On April 3, 2008, an on-line check of the United States Postal Express Mail envelope no. EB 454271890 US, via the USPS on-line service revealed that the USPS Envelope had been delivered and signed for on April 2, 2008 at 11:55 AM, by BELER.

29. On April 3, 2008, the CS placed a consensually recorded call to BELER at her Secretary of State office. BELER confirmed she received the package containing the $500.00 money order. BELER advised that the second vehicle title in the name of Individual A would be completed on April 7, 2008, and would be sent out in the mail that afternoon.

30. On April 4, 2008, law enforcement learned that Money Order No. 302811272, was cashed at the Heartland Credit Union, Springfield, Illinois. An e-mail copy of the cashed money order revealed that it was signed by "YVETTE BELER."

31. On April 7, 2008, the CS placed a consensually recorded call to BELER at her Secretary of State office. BELER related she was in possession of the title for CS, and would be sending it overnight on April 7, 2008. BELER further related she received the $500 and had not spent the money.

32. On April 8, 2008, law enforcement learned through a review of Illinois Secretary of State databases that the vehicle title for the 2008 Mercedes Benz S550V4, VIN No.

WDDNG86X38A196613 was titled to the CS as of April 4, 2008, and the financial lien had been removed.

33. On April 9, 2008, the CS placed a consensually recorded call to BELER on her cell number. BELER stated that she forgot to mail the package on the previous date set, but related she sent the title on April 9, 2008. BELER further related that her new computer was in and she believed she would be able to retrieve identification information in the next two days.

34. An on-line check of the United States Postal Express Mail envelope No. EB 655620606 US, via the USPS on-line service revealed that the USPS Envelope would arrive by 3:00 PM, at P.O. Box 1879, in Matteson, IL on April 9, 2008.

35. On April 10, 2008, I recovered a United States Postal Express Mail envelope package with the tracking number No. EB 655620606 US from P.O. Box 1879, Matteson, IL. The package contained one Illinois Vehicle Title No. G05685443 in the name of the CS. The United States Postal Express Mail envelope contained the signature "YVETTE BELER" confirming no signature was required upon delivery.

36. Based on the facts described above, I submit that there is probable cause to believe that beginning March 13, 2008 and continuing through at least April 9, 2008, defendant BELER devised and intended to devise a scheme to defraud the State of Illinois of money, property, and the intangible right to the honest services of BELER, and to obtain money and property by means of materially false and fraudulent pretenses, representations, promises and material omission, and in furtherance thereof, did on April 9, 2006 cause to be delivered by mail according to the direction thereon an envelope bearing a Chicago address and containing one Illinois Vehicle Title No. G05685443 in

the name of the CS, in violation of Title 18, United States Codes Sections 1341, 1346 and 2.

_____
Todd Di Carlo, Special Agent
United States Secret Service

Subscribed and sworn to before me,
This 28th day of April, 2008

_____
U.S. Magistrate Judge

13