UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**JUDGE LEINENWEBER**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | **MAGISTRATE JUDGE DENLOW** |
| ) | No. 08 CR 343 |
| vs. ) | |
| ) | Violations: Title 18 United States Code, |
| ) | Section 2, 1341 and 1346 |
| YVETTE BELER ) | **FILED** |
| ) | |

The SPECIAL JUNE 2007 GRAND JURY charges:

JUN 2 6 2008 T C

1. At all times material to this indictment:

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

a. Defendant YVETTE BELER was employed as a data input controller at the Springfield, Illinois offices of the Illinois Secretary of State ("SOS"). In that capacity, defendant BELER had access to SOS computer databases that contained individual personal identifier information, such as dates of birth, social security numbers, addresses and driver's license numbers, as well as vehicle information such as VIN numbers, license plate registrations, registered title holders and lienholders.

b. Vehicles owned in the State of Illinois in order to be used on Illinois public roads were required to have a title and registration issued through the SOS office. Illinois vehicular titles were mailed to lienholders if a lien was applied to the title. To remove a lienholder, an individual could apply for a corrected title through the SOS office and submit a lien clearance letter from the lienholder indicating that the obligation underlying the lien had been paid satisfied.

### Laws and Duties Applicable to State Employees

2. Defendant BELER, in her capacity as an employee of the Illinois Secretary of State, was bound by the following laws, duties, policies and procedures:

1

a. Defendant BELER owed a duty of honest services to the State and the people of Illinois in performance of her respective public duties.

b. Pursuant to the criminal laws of the State of Illinois (720 ILCS 5/33-1(d)), defendant BELER was prohibited from receiving any property or personal advantage not authorized by law, knowing it was promised or tendered with intent to cause her to influence the performance of any act related to the employment or function of her office.

c. Pursuant to the criminal laws of the State of Illinois (720 ILCS 5/33-3(c)), defendant BELER was prohibited from performing any act in excess of her lawful authority, with intent to obtain a personal advantage for herself or others.

d. Pursuant to the criminal laws of the State of Illinois (720 ILCS 5/33-3(d)), defendant BELER was prohibited from soliciting or knowingly accepting, for the performance of any act, a fee or reward which she knew was not authorized by law.

### The Scheme

3. Beginning no later than March 13, 2008 and continuing through at least April 9, 2008, at Matteson, in the Northern District of Illinois, Eastern Division, and elsewhere:

YVETTE BELER,

defendant herein, along with others known and unknown, devised and intended to devise, and participated in a scheme and artifice to defraud the people of the State of Illinois, and the State of Illinois, of money property and the intangible right to the honest services of BELER, and to obtain money and property by means of materially false and fraudulent pretenses, representations, promises and material omissions, which scheme is further described below.

4. It was part of the scheme that defendant BELER, as a SOS employee, used her official

access to SOS computer databases to obtain and give out confidential information including, individual personal identifiers, such as dates of birth, social security numbers, addresses and driver's license numbers and vehicle information, such as license plate registrations, registered title holders and lien holders in exchange for monetary compensation.

5. It was further part of the scheme that defendant BELER used her official access to SOS computer databases containing information regarding the lien holders for vehicle titles to fraudulently release liens on vehicle titles in exchange for monetary compensation.

6. It was further part of the scheme that, on March 13, 2008, defendant BELER, agreed to access SOS databases to provide Individual A, for the purpose of among others generating new vehicular titles, with the following confidential information: (i) the names of the registered owners and lienholders of two vehicles – identified by Individual A by VIN numbers #WDDNG86X38A96613 (Vehicle 1) and #WDDNG86438A192108 (Vehicle 2) and (ii) personal identifier information, including dates of birth, social security numbers and addresses of for three names provided to defendant BELER by Individual A, specifically – Individuals B, C and D.

7. It was further part of the scheme that, on March 13, 2008, defendant BELER advised Individual A that she had successfully located certain of the requested information corresponding to the VIN numbers supplied by Individual A and that JP Morgan Chase Bank held the lien on Vehicle 1 and that Vehicle 2 was registered to Individual E and subject to a lien filed by Soy Bank.

8. It was further part of the scheme that, on or about March 14, 2008, defendant BELER received and accepted United States Express Mail parcel no. EB 655620552 US, which was mailed from Matteson, Illinois and sent to the attention of defendant BELER, care of Secretary of State, 501 S. 2nd Street, Rm 521, Springfield, Illinois 62756. That parcel contained the following items: (i)

Money Order No. B350405 for $65.00, for the processing of a title for Vehicle 1; (ii) a fictitious release of lien from JP Morgan Chase for Vehicle 1; (iii) a handwritten note from Individual A; and (iv) $120 in United States currency.

9. It was further part of the scheme that, on March 17, 2008, defendant BELER related to Individual A that she was having trouble accessing the SOS computer system to check the names previously provided to her by Individual A, but stated that she hoped to get the titles processed by the following week. In so doing, defendant BELER further related that she spent extra money to obtain the title for Vehicle 1, in response to which Individual A agreed to send money to compensate defendant BELER for the personally incurred expense.

10. It was further part of the scheme that, on or about March 18, 2008, defendant BELER received and accepted a United States Express Mail parcel no. EB 655616495US, which was mailed from Matteson, Illinois and sent to the attention of defendant BELER, care of Secretary of State, 501 S. 2nd Street, Rm. 521, Springfield, Illinois 62756. That parcel contained: (i) Money Order No. B350785 for $65.00, made out to the Illinois Secretary of State for the processing of a title for Vehicle 2; (ii) a fictitious release of lien from Soy Capital, releasing the lien on Vehicle 2; (iii) a handwritten note from Individual A; and (iv) $120 in United States currency.

11. It was further part of the scheme that, on or about March 17, 2008, defendant BELER had a conversation with Individual A who told defendant BELER that the bank letters for Vehicles 1 and 2 were created by Individual A, and not generated by the lienholding banks that currently held the titles.

12. It was further part of the scheme that, on or about March 19, 2008, defendant BELER executed and transmitted for SOS processing a request for a corrected title for Vehicle 2, which

requested removal of the current lienholder and attached the fraudulent lien release previously supplied to defendant BELER by Individual A.

13. It was further part of the scheme that, on March 21, 2008, defendant BELER requested from Individual A the mileage for the two car titles previously requested by Individual A. Defendant BELER informed Individual A that mileage information for cars with model years of 2007 or later was required for title requests. Individual A provided the mileage information requested by defendant BELER who informed Individual A that she would send only one title at a time.

14. It was further part of the scheme that, on or about March 25, 2008, defendant BELER executed and transmitted for SOS processing a request for a corrected title for Vehicle 1, which requested removal of current lienholder and attached the purported lien release as supplied to defendant BELER by Individual A.

15. It was further part of the scheme that, on or about March 25, 2008, based on defendant BELER's request the SOS office issued a "corrected title" for Vehicle 2 reflecting that it was not encumbered by a lienholder.

16. It was further part of the scheme that, on March 27, 2008, defendant BELER spoke with Individual A by phone in order to confirm Individual A's post office box address and to advise him that she was sending out the newly cleared title for Vehicle 2 by United States Express Mail, and that Individual A should receive the envelope the following day. Defendant BELER further related that she would fill out the title application and appropriate paperwork to transfer the title for Vehicle 1.

17. It was further part of the scheme that, on March 27, 2008, defendant BELER spoke

5

with Individual A by phone and told him that she mailed to Individual A documents with Individual B's personal information, along with the vehicle title for Vehicle 2. Defendant BELER also related that she would mail the cleared title for Vehicle 1 on April 2, 2008.

18. It was further part of the scheme that, on March 27, 2008, defendant BELER spoke by phone with Individual A to confirm her home address for the purpose of receiving further mail and monetary compensation from Individual A for information and services she unlawfully provided to Individual A.

19. It was further part of the scheme that, on or about March 28, 2008, defendant BELER mailed a United States Express Mail envelope no. EB 655616487 addressed to Individual A, Matteson, IL 60443, from Secretary of State, 501 South 2nd Street, Springfield, IL 62756, which envelope contained: (i) a printout of personal information for names identical to Individual B, which included social security number, date of birth, driver's license number, height, and weight; and (ii) State of Illinois Certificate of Title No. G05591497 for Vehicle 2.

20. It was further part of the scheme that, on or about April 2, 2008, defendant BELER filled out a request for a new title for Vehicle 1 which reflected the purported sale of the vehicle from Individual C to Individual A and sent the request to be processed through the SOS office.

21. It was further part of the scheme that, on or about April 2, 2008, based on defendant BELER's request the SOS office issued a new title for Vehicle 1 for Individual A that was not encumbered by a lienholder.

22. It was further part of the scheme that, on April 1, 2008, USPS Express Mail USPS Express Mail envelope no. EB 454271890 US, was sent to defendant BELER at her home address in Springfield, Illinois from Individual A. The envelope contained a thank you note from Individual

A and TCF Money Order No. 302811272 in the amount of $500.00 made payable to Defendant BELER

23. It was further part of the scheme that, on April 3, 2008, defendant BELER spoke by phone with Individual A and confirmed that she had received the package containing the $500.00 money order. Defendant BELER further stated that the title for Vehicle 1 would be completed on April 7, 2008.

24. It was further part of the scheme that, on April 9, 2008, defendant BELER spoke by phone with Individual A to advise him that she had forgotten to mail the package on the previously represented date, but that she sent the corrected title for Vehicle 1 on April 9, 2008.

25. It was further part of the scheme that, on April 9, 2008, defendant BELER mailed and caused to be mailed a United States Postal Express Mail envelope package with the tracking number no. EB 655620606 from defendant BELER to Individual A at P.O. Box 1879, Matteson, Illinois, which envelope contained one Illinois Vehicle Title No. G05685443 in the name of Individual A for Vehicle 1.

26. It was further part of the scheme that defendant BELER did misrepresent, conceal, hide and cause to be misrepresented, concealed and hidden, the purposes of and acts done in furtherance of the scheme.

27. On or about April 9, 2008, at Matteson, in the Northern District of Illinois, Eastern Division,

YVETTE BELER,

defendant herein, for the purpose of executing the above-described scheme and attempting to do so, knowingly caused to be delivered by mail, at the place at which it was directed to be delivered,

specifically a P.O. Box in Matteson, Illinois an envelope containing one Illinois Vehicle Title No. G05685443;

In violation of Title 18, United States Code, Sections 1341, 1346 and 2.

## COUNT TWO

The SPECIAL MARCH 2007 GRAND JURY further charges:

1. The allegations in paragraphs 1-26 of Count One of this indictment are hereby realleged and incorporated herein as if fully set forth herein.

2. On or about March 28, 2008, at Matteson, in the Northern District of Illinois, Eastern Division,

### YVETTE BELER,

defendant herein, for the purpose of executing the above-described scheme and attempting to do so, knowingly caused to be delivered by mail, at the place at which it was directed to be delivered, specifically a P.O. Box in Matteson, Illinois an envelope containing a printout of personal information for names identical to Individual B's name, which included social security numbers, dates of birth, driver's license number, height and weight, and one Illinois Vehicle Title No. G05591497;

In violation of Title 18, United States Code, Sections 1341, 1346 and 2.

A TRUE BILL:

_____
FOREPERSON

*Patrick J. Fitzgerald*
UNITED STATES ATTORNEY  by
*Joel R. Levin*